UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARA FOURNIER,

       Plaintiff,

v.

ILLINOIS TOOL WORKS INC. d/b/a
DELTAR FASTENERS, NA,

       Defendant.
_____/

Case No: 24-10355

Honorable Nancy G. Edmunds
Mag. Judge Anthony P. Patti

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Sara Fournier brings this case under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") for alleged experiences of gender discrimination and retaliation.[1] (ECF No. 1-2.) This matter is before the Court on Defendant Illinois Tool Works' motion for summary judgment. (ECF No. 15.) Plaintiff filed a response in opposition to Defendant's motion. (ECF No. 18.) Defendant filed a reply. (ECF No. 19.) Under Eastern District of Michigan Local Rule 7.1(f)(2), the motion will be decided without oral argument. (ECF No. 16.)

**I.**    **Background**

This case arises out of events during the last two years of Plaintiff's employment at Deltar Fasteners ("Deltar"), a division of Illinois Tool Works, spanning the first half of

---

[1] Plaintiff originally brought this case in Michigan's Oakland County Circuit Court. (ECF No. 1.) Defendant removed the case to this Court in February 2024. *Id.* Plaintiff's complaint also includes claims under the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, but those claims were dismissed as stipulated to by the Parties. (ECF No. 12.) The Court has retained jurisdiction over the matter due to the diversity of the Parties. (ECF No. 14.)

1

2022 to October 2023. (ECF No. 18.) In this time, Plaintiff alleges observing or experiencing adverse employment actions as a result of gender discrimination and reporting it to human resources employees and Jonathan Johnson, Deltar's Vice President of Sales and Engineering for North America. *Id.* at 607-13. Plaintiff also alleges she suffered adverse employment actions as retaliation for reporting gender discrimination, culminating in her employment being terminated in October 2023. *Id.* at 610-13. At the time of her termination, Plaintiff's position was European Account Manager, which focused on growing Defendant's sales relating to the manufacture of components for use by European automotive original equipment manufacturers in vehicle production. (ECF No. 15, PageID.152.) Adverse employment actions that Plaintiff alleges experiencing or observing are 1) being terminated rather than put on a performance improvement plan ("PIP") or allowed to transfer within the company and 2) being denied opportunity to interview for a promotion position. (ECF No. 18, PageID.607-13.)

**II.    Standard of Review**

Because the parties are diverse and Plaintiff brought this case in Michigan state court and only state-law claims remain, the Court must apply Michigan substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state"); 28 U.S.C. §1332. However, "federal courts sitting in diversity apply . . . federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

2

Federal Rule of Civil Procedure 56(a) provides, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is a genuine dispute of material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts look to the applicable substantive law to determine materiality as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude . . . summary judgment." *Id.* The moving party has an initial burden to inform the court of the portions of the record "which it believes demonstrate the absence of a genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322-23. To do so, the non-moving party must present enough evidence "on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Finally, the court "consider[s] all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail. Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

### III.     Legal Framework for ELCRA Discrimination and Retaliation Claims

ELCRA prohibits an employer from "discharg[ing], or otherwise discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ." Mich. Comp. Laws § 37.2202(a). To establish a prima facie case of discrimination, Plaintiff must show, "(1) she was a member of the protected class; (2) she suffered an adverse employment action . . .; (3) she was

3

qualified for the position; but (4) she was discharged under circumstances that give rise to an inference of unlawful discrimination." *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). In a sex discrimination case, such circumstances include that "similarly situated persons have been treated differently because of their sex." *Marsh v. Dep't of Civ. Serv.*, 433 N.W.2d 820, 823 (Mich. Ct. App.1988).

ELCRA also prohibits "retaliat[ion] or discriminat[ion] against a person because the person has opposed a violation of this act, or because the person has made a charge[] [or] filed a complaint . . . under this act." Mich. Comp Laws. § 37.2701(a). To establish a prima facie case of unlawful retaliation, Plaintiff must show, "(1) that [s]he engaged in a protected activity; (2) that this was known by [Defendant]; (3) that [Defendant] took an employment action adverse to [Plaintiff]; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (Mich. Ct. App. 1997).

**IV.    Analysis: Gender Discrimination**

Plaintiff appears to have waived her gender discrimination claim. In the "Concise Statement of the Issues Presented" section of her response, Plaintiff only mentions her retaliation claim. (ECF No. 18, PageID.604.) Further, Plaintiff has not "explained the elements of a [gender discrimination] claim under Michigan law," and she "ha[s] not pointed to evidence in the record that could satisfy these elements." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). Moreover, Plaintiff has not put forth evidence showing "*similarly situated* employees were treated differently because of their sex." *See Marsh*, 433 N.W.2d at 823 (Mich. Ct. App. 1988) (emphasis added). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

4

deemed waived." *Kelsey*, 125 F.3d at 995-96 (quoting *Citizens Awareness Network Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995)). Accordingly, summary judgment is appropriate for Plaintiff's gender discrimination claims.

## V. Analysis: Retaliation

Plaintiff claims she engaged in protected activity when she complained that the process for filling the Electric Vehicle Sales Manager ("EV Sales Manager") position[2] entailed gender discrimination because two female colleagues, Veronica Schoell and Meghan Schaefer, were not given an opportunity to interview for the role.[3] (ECF No. 18, PageID.608-09.) Plaintiff alleges she engaged in this protected activity on several occasions, including verbally complaining to Lindsay Sparks, Deltar's Human Resources Director, in late 2022 or early 2023 that the process was "sexist" and in an email sent to Johnson on September 26, 2023, in which Plaintiff states the "decision not to interview Veronica and Meghan raised concerns, particularly in terms of diversity and inclusion." *Id.* at 609, 619. Plaintiff alleges her termination in October 2023 was retaliation by Defendant for raising these complaints of gender discrimination.[4] *Id.* at 617.

---

[2] The role was awarded to Lucas Meerheghe in early 2022. (ECF No. 18-2, PageID.664.)

[3] To the extent Plaintiff alleges her in-person meeting with Jonathan Johnson, that took place sometime between September 8-26, 2023 is protected activity, the Court finds the portions of the record cited by Plaintiff do not support her contention that she raised a claim of gender discrimination at that time. *See Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 72 (Mich. Ct. App. 2001) (citations omitted) ("[t]he employee's charge must clearly convey to an objective employer that the employee is raising the specter of a [gender discrimination claim] pursuant to the CRA"). Plaintiff's testimony regarding her meeting with Johnson that "it was known that that was gender-based inequality" does not support Plaintiff's claim that she told Johnson she had a gender discrimination complaint when it is unclear what "that" refers to since the meeting took place before Plaintiff raised concerns "in terms of diversity and inclusion" in her September 26 email. (ECF Nos. 18, PageID.621; 18-2, PageID.682; 18-4.)

[4] In her response to Defendant's motion, Plaintiff alludes to other potential retaliation, such as Paul Mozik making her look bad in front of her team and withdrawing support for her participation in an exposition. (ECF No. 18, PageID.610.) Plaintiff, however, does not point to evidence that could satisfy the elements of retaliation under Michigan law nor develop argumentation supporting these allegations. Accordingly, these claims are deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995)).

To engage in protected activity, an employee "need not specifically cite the CRA when making a charge under the act. However, the employee must do more than generally assert unfair treatment." *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 72 (Mich. Ct. App. 2001) (citations omitted). The employee's complaint "must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA." *Id.* Here, Plaintiff's email fails to "raise the specter of a claim" of gender discrimination that would be understood as such by an "objective employer." *Id.* Plaintiff did not mention either that she believed discrimination of any kind had occurred or that it had happened because of employees' sex. (*See* ECF No. 18-4.) Instead, the email conveys a vague concern rather than a complaint of gender discrimination under ELCRA.

Plaintiff's verbal complaint to Sparks in late 2022 or early 2023 does constitute protected activity under ELCRA. On that occasion, Plaintiff testified she used the word "sexist" when complaining about the process for filling the EV Sales Manager role. (ECF No. 18-2, PageID.664.) Viewing the facts in the light most favorable to Plaintiff, she has presented sufficient evidence to allow a reasonable jury to conclude that Plaintiff was raising the specter of a complaint of gender discrimination to Sparks in this conversation.

However, Plaintiff's retaliation claim fails for lack of evidence showing either Johnson had knowledge of her protected activity or a causal connection between her protected activity and termination. *See DeFlaviis*, 566 N.W.2d at 663. Plaintiff attempts to show this via a "cat's paw" theory.[5] *See Hicks v. SSP America, Inc.*, 490 Fed. App'x 781,

---

[5] Defendant points out that the "cat's paw" theory has not been adopted by Michigan courts for ELCRA cases, and the Court notes that the Sixth Circuit precedent cited by Plaintiff comes from cases arising under federal anti-discrimination laws. (ECF No. 15, PageID.173.) Federal court opinions interpreting certain civil rights laws have been informative to Michigan courts in interpreting ELCRA, but the Court

785 (6th Cir. 2012) ("knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action") (quotation marks omitted) (quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 553 (6th Cir. 2002)). Defendant has pointed to evidence showing Johnson was the sole decisionmaker regarding Plaintiff's termination. (ECF No. 18-6, PageID.831-32, 842-43.) Plaintiff has not responded with evidence establishing a genuine dispute over whether Johnson was the sole decisionmaker regarding her termination or that Johnson had interactions with Sparks regarding Plaintiff's protected activity. *See Evans v. Professional Transp., Inc.*, 614 Fed. App'x 297, 300 (6th Cir. 2015) ("[c]ircumstantial evidence can support a reasonable inference of the decisionmaker's knowledge if the evidence is comprised of 'specific facts' and not merely 'conspiratorial theories,' 'flights of fancy, [or] speculations . . .'") (quoting *Mulhall*, 287 F.3d at 552). Even if the Court were to accept that any of Plaintiff's September 2023 emails complaining of Mozik's supervision amount to protected activity, Defendant has also pointed to evidence showing the decision was made in August 2023 before they reached Johnson. (ECF No. 18-6, PageID.831-32, 842-43.) Specifically, the decision made in August as part of an organizational assessment was to offer Plaintiff severance and terminate her employment with Deltar in January 2024 because her duties would no longer be shared with Schoell but consolidated with her. *Id.* The decision to move up Plaintiff's separation from Defendant was made in mid-September 2023 after Plaintiff's September 6, 2023 email to Sparks stating she "no longer wish[es] to work for Paul and will be looking for a job elsewhere" and to "expect [her] notice in the coming weeks" if she was not reassigned.

---

need not make any decision on the availability of the "cat's paw" theory in cases arising under ELCRA because Plaintiff fails to show knowledge under this theory anyway.

7

(ECF Nos. 15-2; 18-6, PageID.843.) On this record, no reasonable jury could find that a causal connection exists between Plaintiff's protected activity and her termination where Plaintiff does not point to evidence that Johnson knew of the protected activity, and the decision to terminate Plaintiff's employment occurred before her September 26 email to Johnson.

## VI.     Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment.

SO ORDERED.

                s/ Nancy G. Edmunds  
                Nancy G. Edmunds  
                United States District Judge

Dated: April 15, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 15, 2025, by electronic and/or ordinary mail.

                s/ Marlena Williams  
                Case Manager